UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION


WINFRED V. CAMPBELL                    CIVIL ACTION NO. 12-cv-2774

VERSUS                                 JUDGE FOOTE

N. BURL CAIN                           MAGISTRATE JUDGE HORNSBY


## REPORT AND RECOMMENDATION

**Introduction**

Winfred V. Campbell ("Petitioner") shot and killed his wife, and he shot and wounded his pregnant stepdaughter. He faced a number of charges. A DeSoto Parish jury returned a verdict of guilty of second-degree murder of the wife and guilty of aggravated battery of the stepdaughter. Petitioner was sentenced to mandatory life imprisonment on the second-degree murder conviction, with a 10-year concurrent sentence on the aggravated battery conviction.

Petitioner challenged the sufficiency of the evidence on direct appeal. State v. Campbell, 70 So.3d 1024 (La. App. 2d Cir. 2011). He also filed a post-conviction application that presented additional claims. He now seeks federal habeas corpus relief. For the reasons that follow, it is recommended that his petition be denied.

**Trial Evidence**

Witnesses testified that Petitioner married Sandra Vanzant Campbell in 2003. The couple lived together for some years, but Sandra left several months before the crime and

moved in with her mother (Erma) and her daughter (Jamia).  Jamia testified that Petitioner and Sandra continued to have contact, and Sandra and Erma sometimes took meals to Petitioner.  Jamia said she had a good relationship with Petitioner before the shootings.

The women were home one evening when Petitioner arrived and knocked at the door. Erma and Jamia testified that Petitioner asked to speak to Sandra.  Petitioner began asking Sandra to come home with him, and he quibbled with her about his claim that Sandra had spoken ill of Petitioner's mother and sister.  Jamia said Sandra replied that she was not going anywhere.  Jamia then saw Petitioner lift up his shirt and pull out a gun.

Erma said that it was about this point when Sandra pushed Petitioner out onto the porch.  Jamia said she pretended to go check on a baby but actually tried to call 911.  She could not place the call, so she called an aunt who lived nearby.

Sandra and Petitioner continued talking on the front porch.  Petitioner ended up firing four shots with a 9 mm pistol at Sandra, and at least three of them struck her.  One of the rounds entered Sandra's back, traveled through a lung, and perforated the right pulmonary artery, which was fatal.  Petitioner then opened the door to the home, told Jamia that it was her fault, and fired multiple shots at Jamia.  One round hit her in the thigh, and another hit her ankle.  Jamia survived and gave birth a couple of months later; she recovered from the gunshot wounds after about six months of treatment.

Petitioner got in his truck and drove to the courthouse.  Captain Reed of the Sheriff's Department was outside the jail when he recognized Petitioner walking toward him and asked if he could help.  Petitioner said that he was turning himself in because he had just shot

his wife and stepdaughter.  After Reed overcame his surprise and determined the location of the weapon (in Petitioner's truck), he read Petitioner his <u>Miranda</u> rights.

Less than an hour later, Petitioner was again read his <u>Miranda</u> rights, and he gave a recorded interview with Captain Reed and Sgt. John Cobb.  The confession was played for the jury but not transcribed by the court reporter, and this court does not have a copy of the recording or transcript in the state court records submitted by Petitioner and the State.[1]  Sgt. Cobb characterized the confession as Petitioner admitting that (1) he shot Sandra because she did not want to go home with him and (2) he shot Jamia because she was driving a wedge between him and Sandra.  The state appellate court, which did have access to the confession, stated that it was the "most compelling evidence" of Petitioner's intent, and that Petitioner said he armed himself with a gun and went to the house where his wife was living, with the intent of bringing her home.  Petitioner said that if his wife had done what he asked, she would not have even seen his gun.  She refused to go home with him, and it was then that he carried out his plan to shoot and kill her.  Petitioner has not disputed Sgt. Cobb's or the appellate court's characterizations of his confession.

**Sufficiency of the Evidence**

Petitioner raised a sufficiency of the evidence challenge on direct appeal, but he did not file an application for a writ with the Supreme Court of Louisiana, so he did not exhaust the claim by that route.  He raised the sufficiency claim again in his post-conviction

---

[1] The District Attorney is directed to file into the record a transcript of Petitioner's confession during the objections period that follows this recommendation.

application.  The trial court rejected it on procedural grounds because it had been raised and denied on appeal.  Tr. 260.  The appellate court stated summarily, with respect to all issues, that Petitioner "fails to meet his burden to show that he is entitled to the relief sought."  Tr. 264.  The Supreme Court of Louisiana denied writs without comment.  Tr. 265.  Petitioner thus exhausted the claim, and the State has not raised any procedural bar defense.

Petitioner was convicted of the second degree murder of Sandra.  Louisiana law defines second degree murder as the killing of a human being when the offender has the specific intent to kill or inflict great bodily harm.  La. R.S. 14:30.1(A)(1).  Petitioner argued on appeal that the evidence supported only a conviction for the lesser crime of manslaughter, which includes a homicide which would be second degree murder, but the offense is committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self-control and cool reflection.  La. R.S. 14:31(A)(1).  Petitioner does not challenge his aggravated battery conviction.

In evaluating the sufficiency of evidence to support a conviction "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  Jackson v. Virginia, 99 S.Ct. 2781, 2789 (1979).  "[I]t is the responsibility of the jury—not the court—to decide what conclusions should be drawn from evidence admitted at trial."  Cavazos v. Smith, 132 S.Ct. 2, 4 (2011).

Habeas corpus relief is available with respect to a claim that was adjudicated on the merits in the state court only if the adjudication (1) resulted in a decision that was contrary

to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. 28 U.S.C. § 2254(d).  Thus a state-court decision rejecting a sufficiency challenge is reviewed under a doubly deferential standard.  It may not be overturned on federal habeas unless the decision was an objectively unreasonable application of the deferential Jackson standard.  Parker v. Matthews,132 S.Ct. 2148, 2152 (2012); Harrell v. Cain, 595 Fed. Appx. 439 (5th Cir. 2015).

The state appellate court, on direct appeal, carefully reviewed the evidence and applicable Louisiana jurisprudence.  It noted Petitioner's confession, made only hours after the shootings, in which he stated that he armed himself and went to the house where Sandra was living, with the intent of bringing her back to his home.  Petitioner said that Sandra would have never seen the gun if she had done what he asked, but he shot her when she refused his demand.  Jamia testified that Petitioner drove away from the shooting at a normal speed, and Sgt. Cobb testified that Petitioner "appeared pretty calm" and "wasn't upset" when he gave his confession soon after the shooting.  There was no evidence that Sandra or Jamia or anyone else did anything that would be sufficient to provoke an average person to lose his self-control and fire multiple shots at his wife and stepdaughter.  The evidence showed that Sandra merely refused Petitioner's demand that she come home with him, and that is not sufficient provocation to excuse a murder.  The jury's verdict was entirely

reasonable based on this record, and the state court's rejection of this claim was also reasonable.

Petitioner argues that he would have been convicted of the lesser crime had he been able to testify, but he was prevented from doing so because of his fear of being shocked by the stun belt he had to wear at trial.  The sufficiency of the evidence must be decided based on the evidence actually presented at trial, not what might have been presented.  The stun belt issue will be addressed below.  Habeas relief is not available on the sufficiency of the evidence claim.

**Stun Belt**

Petitioner complains that he was required to wear a stun belt during the trial, which prejudiced him before the jury and resulted in a fear of being shocked that prevented him from taking the stand to testify.  Neither Petitioner nor the State have cited any mention of the stun belt in the trial record, and the court has not seen any such mention.

Petitioner invokes Deck v. Missouri, 125 S.Ct. 2007 (2005), which held that the Constitution forbids the use of visible shackles during the guilt or penalty phase of a trial unless the use is justified by an essential state interest, such as the interest in courtroom security, specific to the defendant on trial.  "[D]ue process does not permit the use of visible restraints if the trial court has not taken account of the circumstances of the particular case." Id. at 2014.  And "where a court, without adequate justification, orders the defendant to wear shackles that will be seen by the jury, the defendant need not demonstrate actual prejudice to make out a due process violation." Id. at 2015.

Petitioner represents that sheriff deputies made the decision to place the stun belt on him, and the trial court did not make any particular findings to justify it.  The court has not seen any such findings in the record, but it has also not seen any mention of the stun belt at all until Petitioner raised the issue in his post-conviction application.  The trial judge responded: "In this case, the stun belt was not visible under petitioner's civilian clothes, nor is there any evidence that the restraint affected the verdict."  He added that "there is no evidence that the jury was even aware of the restraint."  Tr. 259-60.

The Supreme Court in <u>Deck</u> mentioned several times that its was addressing a case that involved *visible* restraints, and federal courts have observed that distinction.  In <u>Mendoza v. Berghuis</u>, 544 F.3d 650 (6th Cir. 2008), the petitioner sought habeas relief because he was required to wear at trial leg shackles that were not visible to the jury; skirts were placed around both counsel tables.  The court of appeals affirmed the district court's denial of habeas relief based on the lack of evidence that the jury was aware of the restraints.

The same court applied this principle to a habeas claim involving a stun belt in <u>Earhart v. Konteh</u>, 589 F.3d 337 (6th Cir. 2009).  The Court stated that the claim "rises or falls on the question of whether the stun belt was visible to the jury."  <u>Id</u>. at 349.  The prisoner claimed that the belt was visible to the jury, but the state court's factual findings in the post-conviction process were that the belt was not known to the jury, so the claim was denied.

<u>Earhart</u> also recognized that "the Supreme Court has yet to consider the issue of whether and when a trial court, consistent with constitutional protections, may order a defendant to wear a stun belt during his trial."  <u>Earhart</u>, 589 F.3d at 348.  Habeas relief is

available only when a claim adjudicated on the merits in state court resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court.  28 U.S.C. § 2254(d).  To the extent there are any decisions from lower courts that might support Petitioner, they are relevant only to the extent they might reflect law established by the Supreme Court.  <u>Coleman v. Thaler</u>, 716 F.3d 895, 901 n. 17 (5th Cir. 2013).  Circuit precedent does not constitute "clearly established Federal law, as determined by the Supreme Court."  <u>Parker v. Matthews</u>, 132 S. Ct. 2148, 2155 (2012).  Petitioner has not cited any Supreme Court authority that makes it unconstitutional to require a defendant to wear a stun belt that is not visible to the jury.

Petitioner claims that he was prevented from testifying because of his fear of the stun belt, but the record undermines that claim.  The trial judge brought Petitioner up at the end of the case and asked him if he had discussed with his attorney the pros and cons of taking the witness stand.  Petitioner stated that he did not want to take the stand.  The judge asked him if he was "comfortable with that decision and it was made freely and voluntarily by you?"  Petitioner answered, "Yes."  Tr. 227-28.  Considering the lack of evidence that the jury was aware of the stun belt or that it had any limiting effect on Petitioner's ability to participate in the trial, this claim lacks merit.

**<u>Miranda</u> Warnings**

Petitioner argues that his confession was inadmissible because the two different <u>Miranda</u> warnings he received were conflicting and confusing.  Captain Reed gave Petitioner

the first warning soon after Petitioner arrived at the jail.  Tr. 68-71.  A written copy of the

"YOUR RIGHTS" form was filed as an Exhibit.  Tr. 231.  The form stated as follows:

> YOU HAVE THE RIGHT TO REMAIN SILENT
>
> ANYTHING YOU SAY CAN BE USED AGAINST YOU IN COURT.
>
> YOU HAVE THE RIGHT TO TALK TO A LAWYER FOR ADVICE BEFORE WE ASK YOU ANY QUESTIONS AND TO HAVE HIM WITH YOU DURING QUESTIONING.
>
> IF YOU CANNOT AFFORD A LAWYER, ONE WILL BE APPOINTED FOR YOU BEFORE ANY QUESTIONING IF YOU WISH.
>
> IF YOU DECIDE TO ANSWER QUESTIONS NOW WITHOUT A LAWYER PRESENT, YOU WILL STILL HAVE THE RIGHT TO STOP ANSWERING AT ANY TIME.  YOU WILL ALSO HAVE THE RIGHT TO STOP ANSWERING AT ANY TIME UNTIL YOU TALK TO A LAWYER.

Petitioner signed a waiver portion of the form that acknowledged that he understood his

rights and was willing to make a statement and answer questions without a lawyer.

Sgt. Cobb testified that he also gave Petitioner <u>Miranda</u> warnings, about 50 minutes

later, and Petitioner again signed a waiver that said he wished to talk even after being advised

of those rights.  Tr. 88-89, 232.  The written form used by Cobb stated the rights as follows:

> You Have The Right to Remain Silent.
>
> Anything You Say Can, And Will Be Used Against You In A Court Of Law.
>
> You Have The Right To Talk To A Lawyer And Have Him Present With You While You Are Being Questioned.
>
> If You Can Not Afford To Hire A Lawyer, One Will Be Appointed To Represent You Before Any Questioning, If You Want One.

Petitioner points to the language in the first warning that said that, if he decided to answer questions without a lawyer present, he would still have the right to stop answering at any time until he talked to a lawyer.  That precise language was not in the second warning, which contained the more general warning that Petitioner had the right to talk to a lawyer and have him present during questioning.

There was a reference at trial to the admission of the statement being approved at a prior "free and voluntary" hearing (Tr. 91), but there is no transcript of that hearing in the record filed by the State.  Petitioner raised the issue on post-conviction review.  The trial court held that the record clearly reflected that the officers informed Petitioner of the essential components of the <u>Miranda</u> rights, that Petitioner understood those rights, and that Petitioner signed a waiver of those rights.  Tr. 260.

A suspect in custody "must be warned prior to any questioning that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires."  <u>Miranda v. Arizona</u>, 86 S.Ct. 1602, 1630 (1966).  "Opportunity to exercise these rights must be afforded to him throughout the interrogation."  <u>Id</u>.

"The four warnings <u>Miranda</u> requires are invariable, but th[e] [Supreme] Court has not dictated the words in which the essential information must be conveyed."  <u>Florida v. Powell</u>, 130 S.Ct. 1195, 1204 (2010), citing <u>California v. Prysock</u>, 101 S.Ct. 2806 (1981) (per curiam) ("This Court has never indicated that the rigidity of <u>Miranda</u> extends to the

precise formulation of the warnings given a criminal defendant." (internal quotation marks omitted)).  In determining whether police officers adequately conveyed the four warnings, courts are not required to examine the words employed "as if construing a will or defining the terms of an easement."  <u>Powell</u>, 130 S.Ct. at 1204. The inquiry is simply whether the warnings reasonably conveyed to a suspect his rights as required by <u>Miranda</u>. <u>Id</u>. <u>Powell</u> cited a number of cases in which the Court reversed lower court decisions that found warnings lacking for some perceived possible ambiguity.

Petitioner must also overcome the habeas requirement that he show the state court decision on the merits of this claim was contrary to, or involved an unreasonable application of, clearly-established federal law as determined by the Supreme Court.  Section 2254(d). Petitioner has not cited any Supreme Court decision that has found lacking a warning similar to the one that preceded his confession or found that a statement was inadmissible because two sets of <u>Miranda</u> warnings contained slight differences.  Both sets of warnings given to Petitioner complied with <u>Miranda</u>.  The fact that he was warned twice of his constitutional rights, although in different language each time, does not give rise to a constitutional violation.  Both warnings were adequate, there was no confusion caused by them, and the state court's adjudication of this claim was not an unreasonable application of <u>Miranda</u>, <u>Powell</u>, or any other Supreme Court decision.

**Ineffective Assistance of Counsel**

**A.  Introduction**

Petitioner complained in his post-conviction application that he was denied the effective assistance of counsel because his trial attorney (1) did not object to Petitioner being forced to wear a stun belt, (2) did not file a motion to suppress his confession based on inadequate Miranda warning, and (3) did not adequately investigate a letter received by the trial judge.  To prevail on a claim of ineffective assistance of counsel, a petitioner must establish both that his counsel's performance fell below an objective standard of reasonableness and that, had counsel performed reasonably, there is a reasonable probability that the result in his case would have been different.  Strickland v. Washington, 104 S.Ct. 2052, 2064 (1984).

**B.  Section 2254(d) Standard**

Petitioner's claim was adjudicated and denied on the merits by the state court, so 28 U.S.C. § 2254(d) directs that the question is not whether a federal court believes the state court's determination under the Strickland standard was incorrect but whether the determination was unreasonable, which is a substantially higher threshold. Schriro v. Landrigan, 127 S.Ct. 1933, 1939 ( 2007).  The Strickland standard is a general standard, so a state court has even more latitude to reasonably determine that a defendant has not satisfied it.  The federal court's review is thus "doubly deferential."  Knowles v. Mirzayance,129 S.Ct. 1411, 1420 (2009).

"If this standard is difficult to meet, that is because it was meant to be."  <u>Harrington</u>

<u>v. Richter</u>, 131 S.Ct. 770, 786 (2011).  Section 2254(d) "stops short of imposing a complete

bar on federal court relitigation of claims already rejected in state proceedings" and reaches

only "extreme malfunctions" in the state criminal justice system.  <u>Id</u>.  Thus, "even a strong

case for relief  does not mean the state court's contrary conclusion was unreasonable."  <u>Id</u>.

### C.  Stun Belt

Petitioner complains that his attorney, the late Joseph M. Clark, was ineffective

because he did not object to Petitioner being forced to wear a stun belt at trial.  The trial court

rejected this claim based on lack of merit in the underlying issue, primarily because the judge

found that the jury was not aware Petitioner was wearing the belt.

Had counsel objected, that would have obligated the court to articulate particular

reasons for the use of the belt.  One court has held that the lack of such an objection was a

failure to provide adequate legal assistance, but the <u>Strickland</u> claim was still not grounds for

habeas relief because there was no prejudice if the jury was unaware of the belt.  <u>Wrinkles</u>

<u>v. Buss</u>, 537 F.3d 804 (7th Cir. 2008).  "Without evidence that the jurors saw the stun belt,

or that he was otherwise affected by the stun belt throughout trial [P]etitioner cannot

demonstrate prejudice."  <u>Wrinkles</u>, 537 F.3d at 823, citing <u>Strickland</u>.  Assuming any fault

by counsel, that is the correct result in this case as well.

Finally, even if an erroneous requirement that a prisoner wear visible shackles before

a jury may not require a showing of prejudice to merit relief, a <u>Strickland</u> claim based on the

lack of an objection does require satisfaction of <u>Strickland</u>'s prejudice prong.  <u>See Pickney</u>

v. Cain, 337 F.3d 542, 546 (5th Cir. 2003) (discrimination in selection of grand jury foreman did not require a showing of prejudice, but Strickland claim based on a lack of a related motion to quash did require prejudice).  Relief is not permitted on this claim.

### D.  Miranda Warning

Petitioner argues that counsel should have filed a motion to suppress his confession based on inadequate Miranda warning.  Where counsel is faulted for failure to file a motion to suppress, the defendant must show that his underlying claim is meritorious and that there is a reasonable probability the verdict would have been different absent the excludable evidence.  Kimmelman v. Morrison, 106 S.Ct. 2574, 2583 (1986); Shed v. Thompson, 2007 WL 2711022, *5 (W.D. La. 2007).  The Miranda warnings issue was discussed in detail above, and there is no factual or legal basis for a meritorious motion to suppress the confession due to the Miranda warnings.  Counsel was not ineffective for not filing the motion, and Petitioner has not shown any prejudice from the lack of a motion.

### E.  The Letter

After the trial, an unsigned letter was sent to the trial judge that purported to be written by someone who was with Jamia and others after the trial.  The writer claimed that "they had a get together" the night after the verdict was returned, and Jamia and her aunt were laughing that they "pulled it off" with their testimony at trial.  The writer claimed that the women in the family were trying to poison Petitioner, that the writer was angry because they were not paid as a promised for their role, and that Petitioner had been provoked into pulling a gun.  The writer claimed that Sandra jumped in front of Petitioner and pulled on his

arm, after which the gun "started going off."  Jamia was accused of participating in the elaborate scheme in order to collect "insurance money."  Tr. 234-35.[2]  Petitioner claims this letter was sent to the judge on August 19, 2010, which was several days after the trial that ended on July 29, 2010.  Petitioner faults counsel for not investigating and determining who actually wrote the letter and then, somehow, making use of that information.

The trial judge rejected this claim.  He noted that counsel had reviewed the letter, which raised "issues of veracity and reliability," but determined that it would not advance Petitioner's defense.  The judge found that this decision fell within the range of counsel's judgment about appropriate defense strategy.  Tr. 259.

Counsel cannot be faulted for not making use of the letter at trial; it was not even written until after the verdict was returned.  Petitioner does not identify what proceeding or claim counsel might have used to take advantage of the letter, which on its unsigned face is of extremely questionable value.  Even if counsel had been provided a letter signed by an actual trial witness who recanted, such evidence would have been viewed with "extreme suspicion."  Summers v. Dretke, 431 F.3d 861, 872 (5th Cir. 2005).

The letter could not have been used as a part of the appeal process, as the record is fixed for purposes of direct appeal.  Such material is often presented in the post-conviction application process, but Petitioner represented himself in those proceedings and could come

---

[2] Jamia did collect life insurance proceeds after her mother died. An interpleader was filed because of Petitioner's competing claim to some of the benefits. Unum Life v. Campbell, 08 CV 0549.

up with no use for the letter other than to complain that counsel should have found a use for it.  There is no reason to believe that, even if counsel had further investigated the letter, it would have resulted in a different outcome in this case.

Accordingly,

**IT IS RECOMMENDED** that Petitioner's petition for writ of habeas corpus be denied.

### Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b).  A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.  Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

An appeal may not be taken to the court of appeals from a final order in a proceeding under 28 U.S.C. § 2254 unless a circuit justice, circuit judge, or district judge issues a

certificate of appealability. 28 U.S.C. § 2253(c); F.R.A.P. 22(b).  Rule 11 of the Rules Governing Section 2254 Proceedings for the U.S. District Courts requires the district court to issue or deny a certificate of appealability when it enters a final order adverse to the applicant. A certificate may issue only if the applicant has made a substantial showing of the denial of a constitutional right. Section 2253(c)(2). A party may, within fourteen (14) days from the date of this Report and Recommendation, file a memorandum that sets forth arguments on whether a certificate of appealability should issue.

THUS DONE AND SIGNED in Shreveport, Louisiana, this 14th day of January, 2016.

Mark L. Hornsby
U.S. Magistrate Judge